# 13-4725-cv

United States Court of Appeals

*for the*

Second Circuit

---

YALE NEW HAVEN HOSPITAL,

*Plaintiff-Appellee,*

- v. –

CLAIRE M. NICHOLLS,

*Defendant-Cross-Defendant-Appellee,*

- v. –

BARBARA NICHOLLS,

*Defendant-Cross-Claimant-Appellant*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (BRIDGEPORT)

---

## BRIEF FOR DEFENDANT-CROSS-DEFENDANT-APPELLEE FOR CLAIRE M. NICHOLLS

---

SUSAN E. NUGENT
MURPHY & NUGENT, LLC
*Attorneys for Defendant-Cross-Defendant-Appellee*
234 Church Street, 7th Floor
New Haven, Connecticut 06512
(203) 787-6711

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ……………………………………………....

STATEMENT OF THE CASE ………………….....................................1

SUMMARY OF ARGUMENT……………………………………… 6

STANDARD  OF REVIEW ……………………………………………8

ARGUMENT ……………………………………………………………9

I.    THE FINAL JUDGMENT OF THE DISTRICT COURT SHOULD BE
      AFFIRMED AS THE DISTRICT COURT PROPERLY DETERMINED
      THAT CLAIRE M. NICHOLLS IS ENTITLED TO SUMMARY
      JUDGMENT AS A MATTER OF LAW…..…………………………9

      A. The United States Supreme Court's decision in *Kennedy v. Plan Adm.*
         *For Dupont Sav. & Inv. Plan*, 129 S.Ct.865(2009), is not applicable to
         this controversy and the holding does not impact the district court
         decision to grant Claire M. Nicholl's summary judgment……………..11
      B. The determination that the divorce decree "substantially complies" to
         qualify  as a QDRO does not violate the meaning of the statute……….14

II.   CLAIRE NICHOLLS PRESENTED TWO VALID *NUNC PRO TUNC*
      QUALIFIED DOMESTIC RELATIONS ORDERS TO YNHH AND
      YNHH'S PLAN ADMINISTRATOR SHOULD IMPLEMENT THE
      ORDERS TO GRANT HER THE BENEFITS TO WHICH SHE IS
      ENTITLED ……………………………………………………..……16

      A. The district court decision does alter the state family court
         judgment…………………………………………………………...18
      B. The fact that Claire Nicholls' QDROs were presented after the
         participant's death and seek to revert back to the date of state court
         judgment does not impact on the validity of her right to benefits and Yale
         New Haven Hospital should pay her the benefits to which she is
         entitled......................................................................................19
      C. Claire M. Nicholl's Posthumous QDROs are not invalid under Thomas,
         Hopkins or Davenport…………………………………………….21

i

III.    IF YNHH DOES NOT EFFECTUATE THE QDROS, THE PURPOSE
        AND INTENT OF THE REA AMENDMENT TO ERISA TO ALLOW
        FOR QDRO'S WOULD BE RENDERED MEANINGLESS....................23

        CONCLUSION...……………………..……………………….........… 24

# TABLE OF AUTHORITIES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) . . . . . . . . . .  9, 10

Estate of Becker v. Becker, 32 P.3d 557 (Colo.CT.App.2000) . . . . . . . . . . . . . . 21

Boggs v. Boggs, 520 U.S. 833, 839 (1997) . . . . . . . . . . . . . . . . . . . . . . . . .  16

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) . . . . . . . . . . . . . . . . . . . . . .9

Davenport v. Davenport, 146 F. Supp. 2d 770 (M.D.N.C.; 2001) . . . . . . . . . . . .22

Hisquiredo v. Hisquierdo, 439 U.S. 572 (1979). . . . . . . . . . . . . . . . . . . . . . . .24

Hopkins vs AT&T Global Information Solutions, 105 F. 3d 153 (4th Cir. 1997)..17

IBM Savings Plan v. Price, 349 Fed.Supp.2d 854 (2004), and 29 U.S.C.A. §
1056(d)(3)(G), 1056 (d)(3)(H). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21, 22

Kennedy v. Plan Adm. For Dupont Sav. & Inv. Plan, 129S-Ct.864 (2009) . .. . 6, 11

Lexington Ins. Co. v. Rounds, 349 F. Supp. 2d. 861 (D.Vt.2004) . . . . . . . . . . . 22

Metropolitan Life Ins. Co. v. Bigelow, 283 F.3d 436 (2nd Cir. 2002) . . . . . . .6, 10

Metropolitan Life Ins. Co. v. Leich-Brannan,
812 F. Supp 2d. 729 (E.D.Va, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001). . . . . . . . . . .8

Rivers v. Central & South West Corp., 186 F.3d 681 (5th Cir. 1999) . . . . . . . . . 23

Paragon Podiatry Laboratory Inc. v. KLM Lab, Inc, 984 F.2d 182, 1184-85
 (2nd Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Patton v. Denver Post Corp., 326 F.3d 1148, 1153 (10th Cir.2003) . . . . . . . . . . 21

Samaroo vs. Samaroo, 193 F. 3d 1985 (3rd. Cir. 1999), cert.denied, 120 S. Ct. 1573
(2000), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Shaw v Delta Air Lines, Inc. 463 U.S. 85, 90 (1983) . . . . . . . . . . . . . . . . . . . . 16

Thomas v. Community Renewal Team, Inc. 2011 WL 1134242 (2011) . . . . . . . .21

Trs. Of Directors Guild of America Producer Revision Benefits Plan v. Tise, 234
F.3d 415 (9th Cir. 2000), amended by, 255 F. 3d 661 (9th Cir. 2000). . . . . . . . . . . 20

## STATUTES:

29 U.S.C. § 1001   ……………………………………………………1, 20

29 U.S.C.A. § 1056 (d)(3)(G) …………………………………………...21

29 U.S.C.A. § 1056 (d)(3)(H) …………………………………………...21

## FEDERAL RULES OF CIVIL PROCEDURE:

Fed. R. Civ. P. 56(a) ………………………………………………14

Fed. R. Civ. P. 56(c)………………………………………………14

## <u>STATEMENT OF THE CASE</u>

Harold H. Nicholls was a long term employee of Yale New Haven Hospital. During his employment he participated in an employee pension benefits plan sponsored by Yale-New Haven Hospital ("YNHH"), which is also the Plan Administrator of the plans under the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001 et seq.  [A-52-53]

On May 16, 1987, Harold H. Nicholls married Claire M. Nicholls aka Clair M. Nicholls in New Haven, Connecticut.  [A-15]

On September 5, 2008, after more than twenty-two years, the marriage of Harold H. Nicholls and Claire M. Nicholls was dissolved by order of the State of Connecticut Superior Court, Judicial District of New Haven at New Haven by Judge Denise D. Markle.  (See Dissolution of Marriage (Divorce) Judgment, pages [A-15-31]

A document between the parties entitled "Settlement Agreement/Stipulation to Judgment" dated September 5, 2008 is attached to the Dissolution of Marriage (Divorce) Judgment and its terms are incorporated by reference into the Judgment. [A-17-31]

The agreement assigns certain pieces of real property, listing the street address, city and state for both Claire M. Nicholls and Harry Nicholls.  [A-25]

The terms of the Settlement Agreement/Stipulation to Judgment by and between Harold H. Nicholls and Claire M. Nicholls, incorporated into the Dissolution of Marriage (Divorce) Judgment include that "the husband shall transfer to the wife one-half of that portion of his PENSION and RETIREMENT ACCOUNTS, which were accumulated during the marriage. This will include the marital portion of annual deposit, if any, for the year 2008, which has not yet been made. The value of these accounts in July 2008 was approximately One Hundred Twelve Thousand Dollars ($112,000.00)". [A-28]

The agreement provides that "the assignment and transfer shall be in compliance with the applicable sections of the Internal Revenue Code and the Retirement Equity Act of 1984, as amended." [A-28]

The agreement provides "since the division of the asset is as of the date of the final decree for dissolution of marriage, the wife shall share, in proportion to her ownership interest in the asset, in all earnings, gains, losses, appreciation, and/or depreciation, due to market activity from the date of the final decree for dissolution of marriage to the date of actual assignment and transfer". [A-28]

The agreement provides "to the extent necessary for the husband to protect the wife's interest in the retirement account…he shall name her as a survivor beneficiary of a sufficient sum equal to his obligation on said accounts, until such

time as the assignment and transfer of the retirement funds specified above is completed.  He shall make immediate re-election for that designation, if necessary."  [A-29]

The agreement provides that "…the Court granting the dissolution of this marriage shall retain jurisdiction to amend the …orders regarding the assignment and transfers to the wife…for purposes of establishing or maintaining a Qualified Domestic Relations Order…acceptable to the plan administrators and with provisions which carry out the intent of the division of the parties' retirement assets.  [A-29]

The agreement provides that "Attorney Elizabeth McMahon shall be hired to prepare and implement the Qualified Domestic Relations Orders…and both parties shall cooperate with her.  Each shall pay one-half of the cost of Attorney McMahon's services."  [A-29]

Harold M. Nicholls died on February 12, 2012.  [A-32]

Harold M. Nicholls did not comply with the terms of the Divorce Judgment prior to his death, in that he failed to quit claim his interest in the real property to Claire M. Nicholls, he failed to cooperate with Attorney McMahan and he failed to pay one-half of her fee for the preparation and implementation of the Qualified Domestic Relations Order "QDRO".  [A-13-14]

Subsequent to Harold's death on February 12, 2012, Claire M. Nicholls contacted Attorney McMahon so that the QDRO preparation and implementation could be completed.   [A-13-14]

On June 18, 2012 Judge Bernadette Conway signed a *Nunc Pro Tunc* Qualified Domestic Relations Order directing Yale New Haven Hospital to distribute to Claire M .Nicholls her benefit in the Yale New Haven Hospital Cash Account Pension Plan.   [A-43]

On June 18, 2012 Judge Bernadette Conway signed a *Nunc Pro Tunc* Qualified Domestic Relations Order directing Yale New Haven Hospital to distribute to Claire M. Nicholls her benefit in the Yale New Haven Hospital Matching Tax Shelter Annuity Plan.  [A-48]

The two QDRO's were presented to the Yale New Haven Hospital Plan Administrator.

Barbara Nicholls, Harold's surviving spouse, presented a claim for the entirety of the funds as sole beneficiary of the funds.

On September 13, 2012 YNHH filed an interpleader complaint in the Federal District Court for the District of Connecticut, requesting the Court determine the appropriate distribution of the benefits of the Plans.  [A-2]

On October 11, 2013, Claire M. Nicholls and Barbara Nicholls each filed a motion for summary judgment.  [A-3]

On December 5, 2013 the Honorable Warren W. Eginton entered a final judgment granting Claire M. Nicholl's motion for summary judgment and denying Barbara Nicholls' motion for summary judgment.  [A-60]

Barbara Nicholls filed this appeal on December 13, 2013.

# SUMMARY OF ARGUMENT

In granting Claire M. Nicholl's motion for summary judgment, the district court appropriately determined that there is no material fact in dispute. As a matter of law the court determined that the state court judgment of dissolution itself contained the requisite information necessary to find it "substantially complied" with the statutory requirements under the REA exception to ERISA. Barbara Nicholls asserts the U.S. Supreme Court decision in <u>Kennedy v. Plan Adm. For Dupont Sav. & Inv. Plan</u>, 129S-Ct.864 (2009), makes the finding of "substantial compliance" with the statutory requirements for a QDRO, as set forth in this Court's opinion in <u>Metropolitan Life Ins. Co. v. Bigelow</u>, 283 F.3d 436 (2nd Cir. 2002) insufficient to sustain the summary judgment.

The <u>Bigelow</u> decision and the <u>Kennedy</u> decision, do not address the same issue and therefore do not conflict. <u>Bigelow</u> addresses the QDRO exception to ERISA, and <u>Kennedy</u> addresses the waiver provisions of ERISA.

Although the statute provides a "checklist" of requirements for a document to meet the definition of a QDRO, there is no authority which indicates that something more than substantial compliance is required. Most importantly, an analysis of a document must first begin with the purpose contained therein. If the

purpose is to create a right in an individual, it can proceed through the QDRO statutory checklist analysis.

If the purpose of the document is to divest an individual of a right, in essence, a waiver of a right, it does not qualify as a QDRO and further statutory analysis is not necessary.  Instead, the document purporting to be a waiver, must pass the <u>Kennedy</u> plan rule analysis and it must meet the specific plan requirements as set forth and governed by the plan itself.  Therefore, QDRO's are excepted from the plan document rule by the nature of its' statutory creation in the first place.

The statute is silent as to a timeframe in which a QDRO has to be presented to the plan administrator.  Therefore, it is impossible for a court to require a timeframe for presentment.  This reason alone gives validity to the *nunc pro tunc* effect to a QDRO.  Failure of a court to honor the QDRO will render state court judgments incomplete or not final until a future event occurs, namely the presentment of a QDRO and the transfer of assets by a plan administrator.  This would interfere with state court orders, fail to give state court orders full faith and credit and potentially re-route matrimonial matters into the federal judiciary.  It is unlikely Congress intended such a result when it enacted REA and the QDRO exception to ERISA.

## <u>STANDARD OF REVIEW</u>

The Court reviews the granting of a motion for summary judgment *de novo*.

<u>Morales v. Quintel Entm't, Inc.,</u> 249 F.3d 115, 121 (2d Cir. 2001) ("On appeal

from a grant of summary judgment we review the record *de novo* to determine

whether genuine issues of material fact exist requiring a trial.")

# ARGUMENT

I.    THE FINAL JUDGMENT OF THE DISTRICT COURT SHOULD BE
      AFFIRMED AS THE DISTRICT COURT PROPERLY DETERMINED
      THAT CLAIRE M. NICHOLLS IS ENTITLED TO SUMMARY
      JUDGMENT AS A MATTER OF LAW.

Summary judgment is appropriate "if the movant shows that there is

no genuine dispute as to any material fact and that the movant is entitled to a

judgment as a matter of law." Fed. R. Civ.P. 56(a).  A motion for summary

judgment will be granted where there is no genuine issue as to any material

fact and it is clear that the moving party is entitled to judgment as a matter of

law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  To survive

summary judgment, the non-moving party must identify specific evidence

that shows a genuine issue of material fact, not simply any factual dispute.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Paragon

Podiatry Laboratory Inc. v. KLM Lab, Inc, 984 F.2d 182, 1184-85 (2nd Cir.

1993). Fed.R.Civ.P.56(c) "provides that the mere of existence of some

factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there is not

a genuine issue of material fact."  The mere existence of a scintilla of

evidence in support of the [non-moving party's] position will be insufficient

[to avoid the entry of judgment against the non-moving party] there must be

evidence on which the jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1988).

It is undisputed that the YNHH plans are subject to, and are governed by the Employee Retirement Income Security Act "ERISA". It is undisputed that Harold had an interest in the YNHH plans during his marriage to Claire M. Nicholls. It is undisputed that Harold H. Nicholls and Claire M. Nicholls were divorced on September 5, 2009. It is undisputed that the state court entered orders assigning a specific portion of a specific interest in Harold's YNHH plans as a property settlement to Claire M. Nicholls. It is undisputed that Harold died on February 11, 2012. It is undisputed that at the time of his death, Harold H. Nicholls was still married to Barbara Nicholls despite a fully executed independent contract assigning assets and liabilities between them in a pending dissolution of marriage action. It is undisputed that Claire Nicholls presented two *nunc pro tunc* QDROs signed by a state court judge on June 18, 2012 to YNHH following Harold's death. It is undisputed that Barbara Nicholls is Harold's surviving spouse. It is also undisputed that the district court relied on Metropolitan Life Ins. Co. v Bigelow, 283 F.3d 436 (2nd Cir. 2002) in granting Claire M. Nicholls summary judgment. The district court found the divorce decree itself to be a QDRO, as it substantially complies with statutory requirements.

The matter before the district court and this Court presents issues of law, not disputes of fact.

A. <u>The United States Supreme Court's decision in *Kennedy v. Plan Adm. For Dupont Sav. & Inv. Plan*, 129 S.Ct.865(2009), is not applicable to this controversy and the holding does not impact the district court decision to grant Claire M. Nicholls summary judgment.</u>

Barbara Nicholls cites the U.S. Supreme Court's decision in <u>Kennedy v. Plan Adm. For Dupont Sav. & Inv. Plan</u>, 129S-Ct.864 (2009) and asserts that it is in conflict with <u>Bigelow</u>. The assertion is that the Supreme Court established a "plan documents" standard for the statutory requirements of a QDRO and said decision renders <u>Bigelow</u> inapplicable and inappropriate to the determination of the rightful owner of the Nicholls retirement benefits. This is an incorrect interpretation of <u>Kennedy</u>.

The <u>Kennedy</u> decision does not impact this case as it addresses the exact opposite situation that can arise with regard to retirement benefits in the divorce context. In <u>Kennedy,</u> the parties were divorced and the judgment states that the non-employee, non-plan participant wife waived her rights to her husband's retirement plan benefits. Therefore, following the dissolution of his marriage, Mr. Kennedy was free to change the designated beneficiary in the manner prescribed by the plan administrator of his retirement plans. He did not do so. The question of whether the divorce

decree was sufficient to act as a waiver is the issue addressed by <u>Kennedy</u>. This is quite different from the situation facing Claire M. Nicholls.  Upon her divorce from Harold Nicholls, Claire M. Nicholls has no authority or control to unilaterally secure her benefit in Harold's retirement plans.  As the district court pointed out in its' decision, Claire M. Nicholls is entitled to these assets.  How the assets are transferred is the issue in this matter.  Claire M. Nicholls divorce judgment creates an interest in the retirement assets, post dissolution.  It does not divest her of an interest in the retirement assets. Claire M. Nicholls should receive the assets properly awarded to her by the family court by QDRO in accordance with the governing statute.  An acceptable device for transfer of a retirement interest is a QDRO.  The <u>Kennedy</u> decision states that a QDRO by definition requires that it be the "creat(ion] or recogni[tion of] the existence of an alternate payee's right to …..receive all or a portion of the benefits payable with respect to a participant under a plan. <u>Id</u>. at 873.  Claire's judgment meets the definition of a QDRO.  The Court points out that a QDRO is not the appropriate mechanism to effectuate a waiver of an interest by the non-employee former spouse.  The decision makes sense as following a divorce, the employee has the freedom and control to alter the beneficiary designation to his retirement benefits.

The <u>Kennedy</u> decision stands for the proposition that a QDRO cannot be used to effectuate a waiver of a retirement interest.  As such, the Court noted that the QDRO provisions shed no light on whether a beneficiary may waive rights by a non-QDRO document.  <u>Id.</u> at 873.  The decision is not on point in the Nicholls case as a waiver is not at issue.  Claire M. Nicholls is not a beneficiary of Harry's plans, she is an alternate payee – former spouse.

The <u>Kennedy</u> decision facts are not similar to the facts in this matter nor does the Court mention or cite any case, including <u>Bigelow</u>, at any place in its' decision.  The Court does not mention or discuss the requirements of a QDRO or the idea of "substantial compliance" with QDRO requirements under the statute.  The Court had no need to explore the statute in such a manner.  Instead, the question squarely presented in <u>Kennedy</u> is whether a divorced spouse waived her right to her former spouse's ERISA pension plan, as a formal waiver was embodied in a divorce decree that was not a QDRO.  <u>Id</u>.at 868.  The Supreme Court granted certiorari to resolve a split in lower courts over the issue of a divorced spouse's ability to waive pension plan benefits through a divorce decree not amounting to a QDRO.  <u>Id</u>. at 870.  The Court discussed the analysis of waivers which are inconsistent with plan documents.  The Court established a "plan document" rule for waivers.  The Court pointed out that QDRO's by definition create rights, or

13

recognize an alternate payees right to receive benefits of a participants plan.

Kennedy explored the impact of the waiver and concluded that the waiver,

for many valid administrative and policy reasons, must be ascertained by the

plan administrator to be in compliance with the plan documents.  Therefore,

Kennedy is not helpful to the Nicholls situation.  Kennedy does not render

Bigelow invalid and does not render the district court's reliance on Bigelow

inappropriate.

B.  The determination that the divorce decree "substantially complies" to qualify
as a QDRO itself does not violate the intent and meaning of the statute.

Barbara Nicholls asserts that the Kennedy decision stands for the

proposition that strict compliance with statutory requirements for QDRO's

does not allow room for a finding of "substantial compliance" with the

statute.  Again, this assertion is addressed by the Kennedy decision.  While

the Court mentioned that the statute provides a statutory "checklist" for a

domestic relations orders, it did so to highlight the real concern in Kennedy:

that is, to alleviate plan administrators need to to "figure out whether a

claimed federal common law waiver was knowing and voluntary…and

[make] factually complex and subjective determinations."  Id. at 876.

Barbara Nicholls cites Metropolitan Life Ins. Co. v. Leich-Brannan, 812 F.

Supp 2d. 729 (E.D.Va, 2011) for the proposition that "strict compliance"

with the QDRO statute is mandatory.  In fact, in <u>Leich-Brannan</u> the reason

the domestic relations order failed to qualify as a QDRO is that it was fatally

flawed.  It failed to specify an amount or a percentage of a specific plan to

which the wife was to receive.  <u>Id</u>. at 737.  The decision is helpful as it

points out and makes clear that a QDRO, is an exception to the plan

document rule.  By finding that the document was completely void of one of

the necessary and practical pieces of information made it impossible to

identify the interest it sought to create.

Claire M. Nicholl's dissolution of marriage judgment satisfies all of

the statutory requirements for a QDRO.  First, the parties are identified in

the judgment.  Each party is assigned real property, and Claire's real

property is referenced as the "marital residence" in addition to listing the

street number address, town and state.  Harry Nicholl's assignment of real

property is also specified.  Both parties had counsel of record, therefore

counsel's mailing address was known to the Court and each party.

Additionally, YNHH was aware of Harold's address as he was a long term

employee.  The plans are identified as "his pension and retirement accounts,

which were accumulated during the marriage".  The percentage is specified

in the judgment as "one-half".  The necessary information to identify and

segregate Claire M. Nicholls interest in the retirement benefits as an

alternate payee is present in the divorce judgment itself.

II.     CLAIRE NICHOLLS PRESENTED TWO VALID *NUNC PRO TUNC*
        QUALIFIED DOMESTIC RELATIONS ORDERS TO YNHH AND
        YNHH'S PLAN ADMINISTRATOR SHOULD IMPLEMENT THE
        ORDERS TO GRANT HER THE BENEFITS TO WHICH SHE IS
        ENTITLED

The conflicting claims of a retirement plan participant's family members is

not new to the federal judiciary.  Generally, the disputes have involved a

determination of the rightful beneficiary of the participant's benefit after his or her

death.  Congress enacted ERISA to ensure the proper administration of employee

benefit plans and "to protect plan participants and beneficiaries".  See Boggs v.

Boggs, 520 U.S. 833, 839 (1997), citing Shaw v Delta Air Lines, Inc. 463 U.S. 85,

90 (1983).  There are a number of cases that address conflicting claims of

beneficiaries, however, no case in any circuit squarely addresses the conflict that

exists in the Nicholls situation.  The Court must determine if Claire M. Nicholl's

interest vested at the time of the entry of state court order.  The order itself deems

her to be an alternate payee.  This case is distinct from previous determinations

because Claire M. Nicholls is not asserting a claim as a beneficiary to survivor

benefits.

Barbara Nicholls relies, in part, on  Hopkins vs AT&T Global Information Solutions, 105 F. 3d 153 (4th Cir. 1997).  In Hopkins, a first wife sought and obtained a QDRO from the state family court, for a post divorce judgment regarding an alimony arrearage owed to her.  Before the QDRO was signed by the court, the husband/participant had remarried and retired.  The court held that upon the husband/participant's remarriage and retirement, survivor benefits vested in his second wife and therefore, the husband did not own the rights that the state court ordered in the QDRO – namely to pay to the first wife a portion of his benefits and to designate the first wife as a beneficiary of survivor benefits.  The state family court intended to secure the debt owed by the husband to the wife – the alimony arrearage.  The facts are unlike the facts of the Murphy case.  In this case Claire Nicholls obtained an assignment of property in the divorce proceeding prior to Harold's marriage to Barbara and prior to Harold's death.  Therefore, unlike the husband participant in Hopkins, Harold did not own the rights that were previously assigned to Claire, when he married Barbara.

Additionally, an arrearage, like the post divorce judgment alimony arrearage in Hopkins is a determination that money under a prior order is due and owing from one party to the other.  The first Mrs. Hopkins attempted to use the QDRO as a collection mechanism.  A QDRO would not be effective for this purpose since Mr. Hopkins did not own the benefits, at the time the alimony arrearage was

established, free of claim by his current spouse. Because he was remarried, the second Mrs.Hopkins had an interest in the benefits to the exclusion of his former wife. Hopkins represents the exact type of participant and beneficiary the ERISA legislation intended to protect. Although Barbara Nicholls seeks ERISA protection like the second Mrs. Hopkins, the facts of this case make clear that Barbara Nicholl's asserts a claim for benefits already distributed by the state court to Claire M. Nicholls and therefore not owned by Harold Nicholls at the time of his marriage to Barbara Nicholls. Unlike the second Mrs. Hopkins, Barbara Nicholls seeks benefits greater than what she is entitled to receive.

## A.  The district court decision does alter the state family court judgment.

This matter should not be confused with a litigant returning to the family court to alter a decree posthumously. The Third Circuit addressed the issue of a posthumous revision of a divorce decree in Samaroo vs. Samaroo, 193 F. 3d 1985 (3rd. Cir. 1999), cert.denied, 120 S. Ct. 1573 (2000). The facts of Samaroo at first glance seem similar to the facts of the instant case, in that the parties were divorced, and the divorce court granted the wife a portion of the huband's pension which was effective upon his retirement. The husband died before retirement. The plan administrator found that the divorce decree did not allocate the pre-retirement survivor annuity. The former wife then returned to the state court, and obtained from the state court a revision to the divorce judgment, providing for allocation of

18

the survivor annuity. Since the participant was deceased, his property right could not be re-allocated by the state court. The divorce decree in <u>Samaroo</u> obviously was not clear, and it failed to address the specific interest subject to transfer. Claire Nicholls decree is not only specific and clear, but it provides for the exact property distribution, as well as the mechanism – a QDRO – for transfer so that she may obtain her property distribution.

The family court in <u>Samaroo</u> in essence, did a retroactive re-distribution of rights and attempted to have the same revert back to the date of the original order. The Third Circuit was correct in its holding that the plan administrator could not acknowledge and thus effectuate a post judgment modification of this kind.

B.  <u>The fact that Claire Nicholls' QDROs were presented after the participant's death and seek to revert back to the date of state court judgment does not impact on the validity of her right to benefits and Yale New Haven Hospital should pay her the benefits to which she is entitled.</u>

The weight of authority in the federal judiciary strongly supports the view that a QDRO may be entered retrospectively after the death of a plan participant. As long as the QDRO meets the statutory requirements, which is not an issue in this case, it is valid.  Many courts have issued QDROs *nunc pro tunc* after the death of the plan participant.

Courts have recognized that there may be lag time between the time the order regarding benefits enter and the time the QDRO is signed by a judge and

19

presented to the plan administrator for qualification.  See <u>Trs. Of Directors Guild of America Producer Revision Benefits Plan v. Tise</u>, 234 F.3d 415 (9th Cir. 2000), <u>amended by</u>, 255 F. 3d 661 (9th Cir. 2000).  The Nicholls contemplated a delay as the divorce judgment provided that Harold shall name [Claire] as a survivor beneficiary of a sufficient sum … until such time as the assignment and transfer is complete.  Despite the court order, he did not do so.

The Employee Retirement Income Security Act (ERISA), <u>29 U.S.C. § 1001 et seq</u>., does not require that a qualified domestic relations order (QDRO) be prepared or submitted either at the time of divorce or at any particular time. It also does not require that a domestic relations order (QDRO) be "certified" before a plan may segregate funds.

The Employee Retirement Income Security Act (ERISA), <u>29 U.S.C. § 1001 et seq</u>., does not suggest that an alternate payee has no interest in a plan until she obtains a qualified domestic relations order (QDRO); it merely prevents her from enforcing that interest until a QDRO is obtained. A QDRO only renders enforceable an already-existing interest and therefore there is no conceptual reason why a QDRO must be obtained before the plan's participant's benefits become payable on account of his retirement or death.  If Claire M. Nicholls did not obtain a QDRO, albeit posthumous to Harold's death, she would be without the means to perfect a valid claim to YNHH for transfer of benefits.

Clearly, there is no provision of ERISA that requires a QDRO be entered prior to the death of the participant.  See, IBM Savings Plan v. Price, 349 Fed.Supp.2d 854 (2004), and 29 U.S.C.A. § 1056(d)(3)(G), 1056 (d)(3)(H). As long as the QDRO does not seek different or increased benefits than Claire Nicholls was entitled to under her divorce decree, the fact that the QDRO's seek *nunc pro tunc* application is not relevant.  In fact, as long as *nunc pro tunc* orders are not used to "re-write historical facts" and no other person's rights are disturbed when the benefits are transferred pursuant to the QDRO's, the timing of the QDRO is not the issue.  Id. at 856.

The very point of a *nunc pro tunc* order is the creation of a legal fiction that the order did exist as of the date to which it is made effective.  Patton v. Denver Post Corp., 326 F.3d 1148, 1153 (10th Cir.2003).  The fictional quality does not diminish its binding effect.  See Estate of Becker v. Becker, 32 P.3d 557 (Colo.CT.App.2000).

C. Claire M. Nicholl's Posthumous QDROs are not invalid under Thomas, Hopkins or Davenport.

In Thomas v. Community Renewal Team, Inc., 2011 WL 1134242 (2011), motions to dismiss were granted as the plan participant, prior to his death, named his sister as a beneficiary without obtaining the consent of his wife.  The participant and his wife were not divorced.  This case is unlike the Nicholls

situation and does not serve as authority to determine if <u>any</u> posthumous QDRO,

let alone the Nicholls posthumous QDRO's, are valid or invalid.  Similarly in

<u>Davenport vs. Davenport</u>, 146 F. Supp. 2d 770 (M.D.N.C.; 2001), Mr. Davenport

named his estate as his plan beneficiary and failed to obtain his spouse's consent

despite the fact that a dissolution of marriage action was pending at the time of Mr.

Davenport's death.

In <u>Hopkins</u>, as previously discussed, the first Mrs. Hopkins' use of a QDRO

was deemed inappropriate and it was not allowed.

There are numerous cases which support posthumous QDROs.  <u>See</u>, <u>IBM</u>

<u>Savings Plan v. Price</u>, 349 Fed. Supp. 2d 854 (D.Vt.2004), <u>Lexington Ins. Co. v.</u>

<u>Rounds</u>, 349 F. Supp. 2d. 861 (D.Vt.2004).  Further, federal courts must give full

faith and credit to state court orders, including their *nunc pro tunc* effective date.

28 U.S.C.S. §1738.  The function of a *nunc pro tunc* order is not to change or alter

an order but to honor at a future time, an order previously entered.  The lack of a

time frame in the statute makes it impossible for this Court to impose a time frame

on the presentment of a QDRO.  This Court is required, by federal law, to give full

faith and credit to Claire M. Nicholl's QDROs, including the *nunc* pro *tunc*

effective date.

III.   IF YNHH DOES NOT EFFECTUATE THE QDROS, THE PURPOSE
       AND INTENT OF THE REA AMENDMENT TO ERISA TO ALLOW
       FOR QDROS WOULD BE RENDERED MEANINGLESS

Benefit plan distributions that are governed by ERISA, including the YNHH

plans, provide a clear statutory framework for the plan administrator to determine

the benefit and distribute the same pursuant to a valid QDRO.

If the QDROs are not given proper *nunc pro tunc* effect, litigants in state

family court can simply negotiate a settlement on the promise of an asset which

may not ultimately exist based upon a future occurance.  State courts, especially in

matrimonial matters, must have authority and do have authority to allocate assets.

The REA amendments in 1984 is partially a by-product of the increasing instances

of divorce and the need for a mechanism to effectuate transfer of retirement assets.

As the Ninth Circuit held in Accord In re Gendreau, 122 F.3d 815 (9th Cir.1995),

the transfer of rights does not occur when the order is qualified, but, rather when

the order is initially entered.  Other circuits have held that a former spouses' rights

vest when the QDRO is entered.  See Rivers v. Central & SouthWest Corp., 186

F.3d 681 (5th Cir.1999).  The federal circuit courts are split on this issue.  However,

the ERISA statutory scheme as well as public policy considerations dictate that the

view that the right vests when the state court enters its orders awarding assets or

benefits comports with logic.  Such a view is consistent with Congress' intent as

set forth in ERISA and REA.  The statute itself is good evidence that Congress

23

intended rights to vest before recognition under a QDRO.  If this court finds otherwise, Claire Nicholls will be deprived of a portion of her state court property distribution.

It is unlikely Congress intended ERISA legislation to adversely effect a state court order, and undermine the authority of state family court judges.  "The whole subject of domestic relations of husband and wife…belongs to the laws of the states and not to the laws of the United States."  Hisquiredo v. Hisquierdo, 439 U.S. 572 (1979).

## **CONCLUSION**

For the reasons set forth above, this Court should affirm the decision of the district court granting summary judgment in favor of Claire M. Nicholls.

## RULE 32(A)(7)(C) CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,199 words, excluding the parts of the brief exempted by exempted under Fed. R. App. P. 32(a)(&)(B)(iii). Furthermore, this brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using 14-point Times New Roman typeface using Microsoft Word 2007.

*/s/  Susan E. Nugent*
Susan E. Nugent
*Attorney for Defendant*
*Claire M. Nicholls*
MURPHY & NUGENT, LLC
234 Church Street, 7th Floor
New Haven, CT  06510
Tel:  (203) 787-6711
Fax  (203) 777-6442
snugentlaw@gmail.com
Federal Bar # CT 08131

Dated:  June 20, 2014